T.C. Memo. 2013-213

UNITED STATES TAX COURT

DAVID O. VIOLA AND TAMMY J. VIOLA, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 22327-10.                          Filed September 9, 2013.

Michael A. Fisher, for petitioners.

Mark J. Tober, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

MORRISON, Judge:  The respondent (the IRS) sent the petitioners, Mr.

David O. Viola and Ms. Tammy J. Viola, a notice of deficiency for the tax years

[*2] 2006, 2007, and 2008. In the notice the IRS determined the following

deficiencies and section-6662(a) penalties:[1]

| Year | Deficiency | Penalty sec. 6662(a) |
|------|------------|----------------------|
| 2006 | $442,344 | $88,468.80 |
| 2007 | 11,089 | 2,217.80 |
| 2008 | 51,234 | 10,246.80 |

The deficiency determinations resulted from various adjustments to the items of

income and deductions reported on the Violas' returns. In the stipulation of

settled issues the parties have resolved all the adjustments that the Violas

challenged except for the computational effects of the resolved adjustments. The

only issue for decision is whether the Violas are liable for the penalty for any or all

of the three years before us.

## FINDINGS OF FACT

The Violas were a married couple living in Ohio at all relevant times.

David Viola owned and operated a business, Viola Contracting, LLC, that repaired

and maintained cell phone towers and related equipment. Viola Contracting, LLC,

is a disregarded entity for federal income tax purposes. The Violas reported

[1]All section references are to the Internal Revenue Code in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[*3] income and expenses from the business on Schedules C, Profit or Loss From Business.

In 2006 Viola Contracting, LLC, received $797,962 in non-employee compensation from an entity called REVOL Wireless. REVOL Wireless did not issue Viola Contracting, LLC, a Form 1099-MISC, Miscellaneous Income.

The Violas used Mr. James Csaszar of the accounting firm of Csaszar Snider Accounting Services to prepare all of their federal-income-tax returns for 1989 to 2005. In 2002 Mr. Csaszar lost his accounting license, but the Violas were unaware of this. For the 2006 tax year the Violas provided Mr. Csaszar with the necessary business records to prepare their tax return, including (1) Forms 1099-MISC (which reported $3,266,152 of payments to Viola Contracting, LLC), and (2) documentation of the fact that Viola Contracting, LLC, had received the $797,962 payment from REVOL Wireless. Before Mr. Csaszar could prepare their 2006 return, he suffered a stroke. When the Violas became aware of the stroke, Csaszar Snider Accounting Services assured them that it would still be able to finish the Violas' return. As the due date for the 2006 tax return approached, Mr. Viola periodically called Csaszar Snider Accounting Services to check that the return would be completed on time. However, he did not request any substantive tax advice.

**[*4]**  Csaszar Snider Accounting Services prepared the 2006 return in time for it to be filed timely.  No one from the accounting firm discussed the $797,962 payment from REVOL Wireless with the Violas or gave any advice to the Violas regarding the position to take on their return with respect to the REVOL Wireless payment.  The accounting firm did not give the Violas a copy of the return (a Form 1040, U.S. Individual Income Tax Return) until three weeks after it was filed.  Mr. Viola briefly reviewed the return then.

Attached to the return was a Schedule C for Viola Contracting, LLC.  The Schedule C reported $3,266,152 as the gross receipts for Viola Contracting, LLC.  Mr. Viola noticed that the amount reported as gross receipts on Schedule C was the same as the total of the payments received on Forms 1099-MISC but that it did not include the $797,962 payment from REVOL Wireless.  Mr. Viola assumed, without confirming, that the $797,962 payment was reported elsewhere on the return.  The $797,962 amount was not reported elsewhere on the return.  The Violas concede that the amount should have been reported as gross receipts.[2]

---

[2]The IRS made an upward adjustment of $827,544 to the Violas' Schedule C gross receipts in the notice of deficiency.  The Violas conceded that $797,962 of the adjustment was correct.  See table infra p. 7.  (The IRS conceded the remainder of the adjustment in the stipulation of settled issues.)

**[*5]** For the 2007 and 2008 tax years the Violas continued to have Csaszar Snider Accounting Services prepare their returns.

On July 13, 2010, the IRS issued the Violas a notice of deficiency determining the deficiencies and a section-6662(a) penalty for each of the 2006, 2007, and 2008 tax years. The deficiency determinations reflected various adjustments to the amounts reported on the returns. In their petition the Violas did not challenge some of the adjustments. Of the adjustments challenged in the petition, the parties have resolved all except for computational adjustments, i.e., adjustments that depend solely on other adjustments. In addition, the parties have come to a special agreement in the stipulation of settled issues regarding adjustments made in the notice of deficiency to real estate losses reported on Schedule E, Supplemental Income and Loss, for 2007 and 2008. Even though these adjustments were not challenged in the petition, the parties have agreed that these adjustments will be recomputed to take into account the effect of other adjustments. The adjustments made in the notice of deficiency thus fall into the following three categories:

[*6]   1.   adjustments not challenged by the Violas;[3]

2.   adjustments the Violas initially challenged that were then settled in

the stipulation of settled issues filed in this case;[4] and

3.   adjustments challenged by the Violas that were not settled in the

stipulation of settled issues.  All of the adjustments in this third

category are computational.

---

[3]The adjustments in this category correspond to the following lines in the notice of deficiency:  "Self Employment Tax" (for all three years), "Addnl Child Tax Credit" (for all three years), "Depreciation" (for all three years), "Depreciation and Sec. 179 Expense" (for 2006 and 2007), "Itemized Deductions" (for all three years), "Exemptions" (for 2006 and 2008), "Additional Taxes / Alternative Minimum Tax" (for 2008), "Qualified dividends" (for 2008), and "Capital Gain or Loss" (for 2008).  Some adjustments increase income; some decrease income.  The stipulation of settled issues says that "[t]he parties agree that the remaining adjustments for both of the years at issue [i.e., the adjustments in the notice of deficiency other than the adjustments settled in the stipulation of settled issues] are computational in nature, and will be determined in accordance with the concessions described above."  This, presumably, means that the amounts of the adjustments from the notice in the above lines in the notice--category (1)--are subject to calculation under Rule 155 in accordance with our resolution of the case.

[4]These adjustments are listed in the table below, along with a description of how the parties have resolved each adjustment.

| [*7] Year | Line item on return | Amount of adjustment in the notice of deficiency (all amounts reflect increases in income) | Amount of adjustment conceded by the IRS | Amount of adjustment conceded by the Violas |
|---|---|---|---|---|
| 2006 | Schedule C gross receipts | $827,544 | $29,582 | $797,962 |
| 2006 | Schedule C cost of goods sold | 311,943 | 273,658 | 38,285 |
| 2006 | Schedule C car and truck expenses | 37,113 | -0- | 37,113 |
| 2006 | Schedule C rental or lease expenses for other business property | 45,943 | -0- | 45,943 |
| 2006 | Schedule C expenses for business use of the home | 17,768 | 17,768 | -0- |
| 2006 | Schedule E real estate loss | 24,202 | -0- | 24,202 |
| 2007 | Schedule C cost of goods sold | 166,347 | -0- | 166,347 |
| 2007 | Schedule C expenses for business use of the home | 15,410 | 15,410 | -0- |
| 2008 | Schedule C cost of goods sold | 324,653 | 130,367 | 194,286 |
| 2008 | Schedule C expenses for business use of the home | 21,613 | 21,613 | -0- |

We note that the adjustments in category (3) depend only on the resolution of the other adjustments; i.e., those in categories (1) and (2). Since none of the amounts in category (1) or (2) requires our resolution, it appears that the parties should already have been able to calculate the computational adjustments in categories (1) and (3). Therefore, they should be able to calculate total mutually agreed-upon amounts of the Violas' deficiencies and tax liabilities. Yet nothing in the record shows that the parties have agreed to these amounts. The calculations will thus be made under Rule 155.

**[\*8]**  The Violas timely filed a petition requesting that this Court redetermine the deficiencies, which have now been settled by the parties, and the penalties,[5] which remain at issue.  Trial was held in Tampa, Florida.

OPINION

Section 6662(a) and (b)(2) imposes a 20% penalty on any part of an underpayment that is attributable to a substantial understatement of income tax.  An "understatement" is generally defined as the correct tax minus the tax shown on the return.  Sec. 6662(d)(2)(A); sec. 1.6662-4(b)(2), Income Tax Regs.  An understatement of income tax is substantial if it exceeds the greater of $5,000 or 10% of the correct tax required to be shown on the return.  Sec. 6662(d)(1)(A); sec. 1.6662-4(b)(1), Income Tax Regs.  In an exception to the accuracy-related penalty, section 6664(c)(1) provides that the amount of an underpayment is reduced by any part of an underpayment for which the taxpayer can show both reasonable cause and good faith.  Sec. 6664(c)(1).  Under section 7491(c), the IRS must produce "sufficient evidence indicating that it is appropriate to impose the

---

[5]The amounts of the penalties will depend on the amounts of the underpayments the parties calculate on the basis of this opinion.  See Rule 155.

**[\*9]** \* \* \* penalty". <u>See</u> <u>Higbee v. Commissioner</u>, 116 T.C. 438, 446 (2001). The taxpayer, however, bears the burden of proving that penalties are inappropriate because of reasonable cause. <u>Id.</u>

The Violas have conceded that many of the adjustments made in the notice of deficiency are correct, and so they have admitted that their returns understated their tax liabilities (because the adjustments they have conceded have a net effect of increasing their tax liability). Whether the understatement of tax for each year is substantial, i.e., whether the understatement exceeds the greater of $5,000 or 10% of the correct tax, will be determined under Rule 155.

The Violas contend that they are not liable for the accuracy-related penalties with respect to the items they challenged in their petition because they qualify for

[*10] the reasonable-cause-and-good-faith exception.[6]  The pertinent regulation

provides:

> The determination of whether a taxpayer acted with reasonable cause
> and in good faith is made on a case-by-case basis, taking into account
> all pertinent facts and circumstances. * * * Generally, the most
> important factor is the extent of the taxpayer's effort to assess the
> taxpayer's proper tax liability.  Circumstances that may indicate
> reasonable cause and good faith include an honest misunderstanding
> of fact or law that is reasonable in light of all of the facts and
> circumstances, including the experience, knowledge, and education of
> the taxpayer.  An isolated computational or transcriptional error
> generally is not inconsistent with reasonable cause and good faith.
> * * * Reliance on * * * professional advice * * * constitutes

---

[6]There are other exceptions to the penalty that the Violas do not invoke here; i.e., sec. 6662(d)(2)(B) provides that an understatement is reduced, first, where the taxpayers had substantial authority for their treatment of an item giving rise to the understatement or, second, where the relevant facts affecting the treatment of an item giving rise to an understatement are adequately disclosed and the taxpayers had a reasonable basis for their treatment of that item.

In their answering brief the Violas claimed that Csaszar Snider Accounting Services submitted their 2006 and 2008 returns without their signatures or permission, that these returns were therefore not filed, and that therefore sec. 6662 penalties cannot be imposed for these two years.  See sec. 6664(b).  But the Violas raised the issue of whether they filed returns only in a brief filed after trial.  This is too late.  See Robertson v. Commissioner, 55 T.C. 862, 865 (1971).  (The Violas did not even raise the issue in their opening brief, which asserted only that they "could argue" that their 2006 and 2008 returns were never actually filed.)  In any case, we find unpersuasive the Violas' claim that the returns for 2006 and 2008 were filed without their permission.  Mr. Viola testified only that he could not recall whether he had given permission to anyone at Csaszar Snider Accounting Services to file the returns.  Furthermore, the Violas used Csaszar Snider Accounting Services for their 2007 and 2008 returns even though, they now say, the firm filed their 2006 return without their permission.  We find that the 2006 and 2008 returns were filed with their permission.

[*11]     reasonable cause and good faith if, under all the circumstances, such reliance was reasonable and the taxpayer acted in good faith. * * *

Sec. 1.6664-4(b)(1), Income Tax Regs.  Whether the taxpayer acted with reasonable cause and in good faith thus depends on the pertinent facts and circumstances, including the taxpayer's efforts to assess the proper tax liability, the taxpayer's knowledge and experience, and the extent to which the taxpayer relied on the advice of a tax professional.

1.     The portion of the 2006 underpayment attributable to the omitted payment from REVOL Wireless

The Violas contend that their 2006 return did not report the $797,962 payment from REVOL Wireless because Csaszar Snider Accounting Services either (1) decided that the $797,962 payment was not includable in their income or (2) made a clerical error in failing to include the payment on their return.  A similar argument was made by the taxpayers in Woodsum v. Commissioner, 136 T.C. 585, 593 (2011).  In Woodsum we held that the taxpayers could not claim to have relied on the advice of their tax return preparer because there was no evidence that the tax return preparer made a judgment or that the taxpayers relied on it.  Id. at 592-593.  Likewise, there is no evidence that Csaszar Snider Accounting Services made a judgment that the REVOL Wireless payment was not

**[*12]** includable in the Violas' income.  And there is no evidence that the Violas relied on any such judgment of Csaszar Snider Accounting Services.

In Woodsum the Court further held that even if the error by the tax return preparer was an "innocent oversight" (such as an innocent computational or transcriptional error), the taxpayers did not have reasonable cause for signing the erroneous return.  Id. at 594.  For them to qualify for the reasonable-cause exception, they would have to show that they made a reasonable review of the completed return, and the Court held that they did not do so.  Id. at 596.  At minimum, the Court held, taxpayers should check returns prepared by others to make sure that each item of income is reported.  See id.; see also Magill v. Commissioner, 70 T.C. 465, 479-480 (1978), aff'd, 651 F.2d 1233 (6th Cir. 1981).  When Mr. Viola examined the Schedule C he noticed the REVOL Wireless payment was not reported there; he merely assumed instead of confirming that it was reported elsewhere on the return.  The Violas failed to make a reasonable effort to be sure they ascertained their proper tax liability.[7]  Therefore, they did not

---

[7]The Violas rely on Thrane v. Commissioner, T.C. Memo. 2006-269. Thrane held that the taxpayer had reasonable cause for failure to report income in part because a reasonable inspection of the return, whether or not the taxpayer actually conducted one, would not have uncovered the error.  See id., slip op. at 11-12.  By contrast, a reasonable inspection of the Violas' return would have uncovered the failure to report the REVOL Wireless payment.

**[*13]** show that they had reasonable cause and acted in good faith with respect to the unreported payment from REVOL Wireless.

2.      The portions of the 2006, 2007, and 2008 underpayments attributable to other adjustments

The Violas assert that they had reasonable cause for, and acted in good faith with respect to, the full amounts of the underpayments for all three years. The IRS, on the other hand, continues to assert the same amounts of penalties originally determined in the notice of deficiency. Neither side differentiates between the types of adjustments for the purposes of the reasonable-cause-and-good-faith exception--the IRS claims that the Violas have not proven reasonable cause and good faith for any parts of the underpayments, while the Violas assert that the entire process they used to generate their income-tax returns demonstrates their good faith and that they had reasonable cause for the entire underpayments. We must therefore discuss the applicability of the reasonable-cause-and-good-faith exception to adjustments in all three of the categories that we have used to classify the adjustments in the notice of deficiency. (We have already discussed the REVOL Wireless payment supra part 1.[8])

---

[8]Some of the underpayments attributable to any overreporting of Schedule E real estate losses for 2007 and 2008 may be reduced as a consequence of the special agreement described supra pp. 5-6.

[*14] We begin with the aspects of the return that gave rise to the adjustments we have placed in category (3). These adjustments are all computational, i.e., they depend on other adjustments. Therefore, whether the underpayments related to the category (3) adjustments are excepted from the penalty depends on whether the exception applies to the other adjustments.

We now consider the aspects of the return that gave rise to the adjustments we have placed in category (2). All of the facts and circumstances must be taken into account in determining whether the Violas had reasonable cause for the underpayments and acted in good faith. Again, the most important factor for us to consider is the extent of the Violas' efforts to report their tax liabilities correctly. Woodsum v. Commissioner, 136 T.C. at 591; sec. 1.6664-4(b)(1), Income Tax Regs.

The Violas submitted a considerable amount of documentation and business records to Csaszar Snider Accounting Services. In doing so, they were following the same routine that they had in prior years. The Violas were not themselves well versed in tax matters: Mr. Viola credibly testified that he did not know what Schedule E is, for example. He began working in construction immediately after high school and started his business after gaining on-the-job experience.

**[\*15]** Unlike the omission of the REVOL Wireless payment, the errors that resulted in the category (2) adjustments were not ones that a reasonable inspection by a taxpayer with the Violas' limited tax knowledge and experience would have been likely to uncover. Thus, taking into account all pertinent facts and circumstances, we hold that the Violas had reasonable cause for claiming the category (2) deductions. They are thus not liable for section-6662 penalties for the portions of the underpayments attributable to the category (2) adjustments.[9]

We now consider the aspects of the return that gave rise to the adjustments we have placed in category (1). The Violas argue that they are entitled to full relief from the penalties on account of the process they used to generate their tax returns: i.e., giving information to their return preparer and conducting a brief review of the resulting tax return. But they introduced no evidence about the

---

[9]The Violas argue that they relied on the professional advice of Csaszar Snider Accounting Services with respect to the deductions and cost of goods sold amounts that they concede were incorrectly reported on their return (i.e., with respect to the aspects of their return that, other than the REVOL Wireless payment, make up our category (2)). The regulation allows us to take reliance on a tax professional into consideration when determining whether the taxpayer acted with reasonable cause and good faith. See sec. 1-6664(4)(b)(1), Income Tax Regs. But because we find that the Violas are not liable for the penalty on the basis of all the facts and circumstances, we need not analyze their argument that they relied on the advice of a tax professional under the tests set out in Neonatology Assocs., P.A. v. Commissioner, 115 T.C. 43, 98 (2000), aff'd, 299 F.3d 221 (3d Cir. 2002), with respect to these adjustments.

**[\*16]** income and expenses, which, as reported on the returns, gave rise to these adjustments.[10] We have no way of knowing whether a reasonable review of the tax returns would have uncovered that the income and expenses were incorrectly reported. See Woodsum v. Commissioner, 136 T.C. at 596. The Violas bear the burden of proving that they had reasonable cause for, and acted in good faith with respect, to, these aspects of the returns. Their general argument that their tax-return-preparation process was reasonable is not sufficient to meet the burden.[11]

We have considered all arguments that the parties have made, and we find any contentions not addressed above to be meritless, irrelevant, or moot.

To reflect the foregoing,

Decision will be entered

under Rule 155.

---

[10]The Violas never challenged these adjustments.

[11]The Rule 155 calculation must thus apply the penalty to the portion of each underpayment attributable to the category (1) adjustments and the REVOL Wireless payment.